IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luzerne County, :
:
Petitioner :
:
v. : No. 443 C.D. 2021
: Submitted: November 19, 2021
Dean Allford (Workers' :
Compensation Appeal Board), :
:
Respondent :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  April 13, 2022


Luzerne County (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a Workers' Compensation Judge (WCJ) granting Dean Allford's (Claimant) Review Petition and medical aspects of his Claim Petition. Employer argues that the WCJ and Board erred in concluding that Claimant's Claim Petition was not barred by the statute of limitations because Claimant was lulled into a false sense of security that his claim had been accepted; by relying upon Claimant's testimony regarding an improperly admitted record; and by not finding that Claimant had fully recovered from his alleged work injury. Upon review, we affirm.

# I. Background

The incident giving rise to this appeal occurred on February 13, 2013 (2013 Injury), but another work injury occurring on March 16, 2015 (2015 Injury) is pertinent to the procedural history and Employer's defense.

Claimant has worked for Employer as a correctional officer at the Luzerne County Correctional Facility for over 32 years. On January 30, 2018, Claimant filed a Claim Petition for the 2015 Injury alleging that he sustained a work-related injury while in the course and scope of his employment when he was assaulted by an inmate on March 16, 2015. Employer filed an Answer denying all of the material allegations. Employer also filed Petitions to Terminate and Suspend Compensation Benefits.

On May 24, 2018, during the pendency of the 2015 Injury claim, Claimant filed a Review Petition relative to the 2013 Injury on the basis that Employer refused to pay for reasonable medical treatment. In the Review Petition, Claimant acknowledged that "there appears to have been a denial of benefits initially" but asserted that he never received notice of the same. Certified Record (C.R.) at 8.[1] Claimant also noted that Employer covered all his medical bills for the 2013 Injury until December 12, 2017. C.R. at 8.

At the WCJ hearing held on June 12, 2018, the parties withdrew the Claim, Termination, and Suspension Petitions relative to the 2015 Injury, and these petitions were dismissed, leaving only Claimant's Review Petition for the 2013 Injury. WCJ's 2/4/19 Op., Finding of Fact (F.F.) No. 6; Reproduced Record (R.R.) at 6a, 10a. In defense of the Review Petition, Employer produced a Notice of Workers' Compensation Denial (Notice of Denial) dated February 21, 2013,

---

[1] Because the Certified Record was filed electronically and was not paginated, the page numbers referenced in this opinion reflect electronic pagination.

acknowledging the 2013 Injury in the form of contusions to the knees and legs, but denying any disability related thereto. Employer did not accept liability for the injury because Claimant was not disabled as a result of the incident. F.F. No. 7; C.R. at 410.

On August 6, 2018, Claimant filed a Claim Petition relative to the 2013 Injury asserting ongoing partial disability from February 13, 2013, onward. Claimant described the injury as a cervical sprain/strain, left shoulder impingement syndrome, pain in the left shoulder, and a sprain of the left rotator cuff capsule. C.R. at 18. Employer filed a timely Answer denying all material allegations and advancing several defenses including, *inter alia*, that Claimant's claims were barred by the statute of limitations. F.F. Nos. 9-10.

The WCJ held evidentiary hearings on Claimant's Review and Claim Petitions. In support, Claimant testified that he sustained an injury on February 13, 2013, when an inmate ran towards him in an aggressive manner necessitating Claimant to restrain the inmate and defend himself by using force. In the process, Claimant fell and injured the left side of his neck, as well as his shoulder and his knees. Claimant completed an accident report immediately after the incident. F.F. No. 13.

Claimant further testified that he was treated by workers' compensation panel physicians and continued to treat with them throughout 2013. They prescribed medication for his neck, and he was also treated for his knees. Claimant resumed full-duty work shortly after the injury, but in August 2013 he was placed on modified duty, which involved more paperwork and less interaction with inmates. Since April 2014, Claimant has continuously treated with John Kline, Jr., M.D. (Dr. Kline).

3

Under Dr. Kline's care, Claimant has received numerous injections in his neck and shoulder area and physical therapy for the 2013 Injury. F.F. No. 13.

Claimant testified that he never received a Notice of Denial from Employer. Claimant identified Debbie Marinelli (Marinelli)[2] from Employer's workers' compensation insurance carrier, Excalibur Insurance Management Services, LLC (Excalibur), as his claims representative. Claimant testified that he regularly communicated with her regarding his claim and that she never once indicated that his claim had been denied. Shortly after the injury, Claimant received correspondence from her and a prescription card to use for prescriptions for the 2013 Injury. On November 29, 2017, Claimant received an updated prescription card. Claimant testified that Marinelli advised him early on that any work absences related to the 2013 Injury would be covered by "comp" time. Claimant testified that whenever he needed time off for medical appointments, "comp time" was applied; he never used any of his own vacation, sick, or personal leave time. F.F. No. 13.

Claimant presented the testimony of Erin Pinto (Pinto), Excalibur's Vice President of Claims, on cross-examination. Pinto testified that she was involved in Claimant's claim since inception. She testified that the 2013 Injury claim was denied because Claimant did not miss any time from work. F.F. No. 14; C.R. at 150. She conceded that Employer had paid for all medical bills related to this injury. She testified that it is common practice for a prescription card to be sent out months after a claim is denied explaining, "just because we're paying medical bills does not mean it's acceptance of an injury." *Id.* at 152. Although she

---

[2] Claimant requested a subpoena for the appearance of Marinelli to appear and testify live at the September 7, 2018 hearing, which the WCJ approved. Despite the subpoena, Marinelli did not appear. Employer's counsel was unable to explain her absence. Claimant's counsel was unable to verify service of the subpoena. F.F. Nos. 11-12.

acknowledged that Claimant treated with workers' compensation panel physicians for the 2013 Injury, she denied that Claimant was paid wage loss benefits for any time missed attending those medical appointments. *Id.* at 152-55. As for the Notice of Denial, she testified that there was a "diary note" indicating that Excalibur had mailed the Denial to Claimant on February 21, 2013, but she could not confirm whether it was actually mailed, noting Marinelli would have been responsible for mailing it. F.F. No. 14; C.R. at 151.

Claimant testified again before the WCJ and once again explained that whenever he went to a doctor or sought treatment for his 2013 Injury, he would notify Employer and the time would be marked off as using a workers' compensation day. Claimant did not use any of his own leave time for such appointments. Employer did not deduct time from Claimant's vacation, sick, or personal time for these absences. In support, Claimant offered into evidence as Claimant's Exhibit No. 8, over Employer's objections, a Kronos Time Card, purporting to show how Employer designated Claimant's leave time between 2013-2017 under various pay codes, including "WC-Work Comp," "S2-Sick Union," "V2-Vaca Union," and holidays. F.F. No. 15; *see* R.R. at 188a-217a.

Claimant also presented the deposition testimony of Dr. Kline, who specializes in the field of Rehabilitative Medicine. Dr. Kline testified that he began treating Claimant for his 2013 Injury in April 2014. Dr. Kline initially diagnosed Claimant with a cervical sprain/strain, as well as a right shoulder impingement syndrome as a result of the 2013 Injury. Dr. Kline continued to treat Claimant. Although he noted that there was some improvement, Dr. Kline opined that Claimant had not fully recovered from the 2013 Injury. At his most recent visit with Claimant in April 2018, Dr. Kline diagnosed Claimant with a left shoulder impingement

5

syndrome, with secondary bursitis, as well as an aggravation of his preexisting degenerative osteoarthritis and disc disease of the cervical spine, with radicular symptomology as a result of the 2013 Injury. He also opined that Claimant had an aggravation of preexisting degenerative osteoarthritis as well as disc disease of the cervical spine relative to the 2015 Injury. Dr. Kline released Claimant to light, modified-duty work with restrictions to avoid lifting or carrying more than 20 pounds as well as repetitive or frequent overhead activity. Dr. Kline opined that no portion of Claimant's shoulder injury is attributable to the 2015 Injury and that all of Claimant's continuing problems relate to the 2013 Injury. F.F. No. 16.

In opposition, Employer presented the deposition testimony of Robert Grob, M.D., a board-certified orthopedic surgeon, who performed an independent medical examination (IME) of Claimant on April 5, 2018. He diagnosed Claimant with a contusion of bilateral knees and left-sided neck strain related to his 2013 Injury, and with arm, neck and facial abrasion, knee pain, and neck strain related to his 2015 Injury. Dr. Grob opined that Claimant was fully recovered from all the injuries he sustained on both dates. He further opined that Claimant is able to return to work in a full-duty, unlimited capacity to his pre-injury position as a correctional officer or in any other occupational category. F.F. No. 17.

The WCJ, having "observed Claimant's bearing and demeanor" during his live testimony on two occasions, found him "genuine and credible" and accepted his testimony as fact. F.F. No. 18. The WCJ found "Pinto's testimony to be of very little use." F.F. No. 19. Although she testified that a Notice of Denial was issued, she admitted she was not responsible for mailing it out and could not say if it actually was mailed to Claimant. Pinto credibly admitted that Employer had paid Claimant's medical bills all along, despite denying the claim. The WCJ accepted her testimony

6

that wage loss benefits were never paid to Claimant, having found that Claimant was actually paid wages in lieu of compensation whenever he missed time from work due to the 2013 Injury. F.F. No. 19.

As for the medical experts, the WCJ found the testimony of Dr. Kline "to be more credible and persuasive" than the testimony of Dr. Grob. F.F. No. 20. To the extent Dr. Grob's testimony conflicted with Dr. Kline's testimony, the WCJ specifically rejected Dr. Grob's testimony. The WCJ explained that Dr. Kline was much more familiar with Claimant and his condition, having examined him on "countless occasions over the course of four (4) years." *Id.* Dr. Kline's testimony regarding Claimant's ongoing problems resulting from the 2013 Injury is consistent with and supported by Claimant's own credible testimony. There is no indication that Claimant had similar problems prior to the 2013 Injury. The WCJ also found that there was no basis for Employer to deny the claim because there was no dispute that Claimant was assaulted on February 13, 2013, and immediately sought medical treatment, and that Employer paid Claimant's medical bills for almost five years and paid him wages in lieu of compensation whenever he missed time from work due to the injuries. Employer accommodated Claimant's medical restrictions by modifying his position. Even Dr. Grob agreed that Claimant had sustained a work-related injury on February 13, 2013. F.F. No. 20.

The WCJ ultimately found that Claimant sustained a work-related injury on February 13, 2013, in the form of bilateral knee contusions, a cervical sprain/strain, and right shoulder impingement syndrome, with a secondary bursitis, as well as an aggravation of his preexisting degenerative osteoarthritis and disc disease of the cervical spine with radicular symptomatology and that Claimant

7

continues to require modified light-duty work as a result of the 2013 Injury. F.F. No. 21.

The WCJ further found that Employer paid Claimant wages in lieu of compensation for any time missed from work related to the 2013 Injury. The WCJ concluded that, although Claimant's Claim and Review Petitions were not timely filed, Employer's payment of medical bills coupled with Employer's payment of wages in lieu of compensation whenever Claimant missed time from work due to the 2013 Injury "lulled Claimant into believing his claim had been accepted, thereby tolling the three[-]year statute of limitations . . . ." WCJ's 2/4/19 Op., Conclusion of Law No. 2. "Claimant was further deceived into thinking his claim had been accepted when he was not provided a copy of the Notice of Denial that was allegedly issued, and [he] was repeatedly misled into believing his claim had been accepted by the claims representative, Debbie Marinelli." *Id.* Claimant's Petitions were filed within three years of the last payment of wages in lieu of compensation paid in November 2017. *Id.*

By decision dated February 4, 2019, the WCJ granted Claimant's Claim and Review Petitions and ordered that Employer shall remain responsible for payment of Claimant's reasonable, necessary, and causally related medical bills. The WCJ did not award litigation costs, noting that Claimant presented no evidence of any fee agreement between Claimant and his counsel or any litigation costs incurred.

Employer appealed to the Board, which affirmed in part, reversed in part, and remanded for further consideration. Although the Board determined that the WCJ erred by admitting the Kronos Time Card into evidence because it was not properly authenticated, the Board found that Claimant's testimony otherwise

8

supported the WCJ's finding that Claimant was lulled into a false sense of security regarding the filing of his claim. Thus, the Board concluded that the WCJ did not err in determining that Claimant's Petitions were not time barred. As to the merits, the Board affirmed the WCJ's decision insofar as the WCJ granted the Review Petition and medical aspects of the Claim Petition. The Board reversed the WCJ's determination to the extent it appeared to grant any claim for disability benefits upon determining that Claimant did not present substantial competent evidence establishing disability and duration. The Board remanded for a determination regarding litigation costs. On remand, the WCJ determined that the issue was moot because the parties advised that Employer had previously paid litigation costs. By final order dated March 29, 2021, the Board affirmed. This appeal now follows.[3]

## II. Issues

Employer argues that the WCJ and Board erred in concluding that Claimant's Claim Petition was not barred by the statute of limitations and that Claimant was lulled into a false sense of security that his claim had been accepted. The WCJ also erred in permitting Claimant to present evidence and testify, over Employer's objections, regarding the Kronos Time Card – a document that Claimant did not prepare, could not properly authenticate, and upon which Claimant incorrectly claimed established that Employer did, in fact, pay indemnity benefits to Claimant relative to the 2013 Injury. Although the Board properly ruled that the

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011). As to questions of law, our standard of review is *de novo* and our scope of review is plenary. *Pitt-Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 207 (Pa. 2006).

9

WCJ erred by admitting the Kronos Time Card, the Board erred by failing to rule that Claimant's testimony regarding the Kronos Time Card was likewise inadmissible. Finally, Employer contends that the WCJ erred in failing to find that Claimant had fully recovered from his alleged work injury.

### III. Discussion
### A. Statute of Limitations

First, Employer contends that both the WCJ and Board erred in determining that Claimant's Claim Petition was not time barred by the statute of limitations. Claimant never filed a Claim Petition relative to his alleged 2013 Injury until August 6, 2018, which is well beyond the three-year statute of limitations for filing a claim. Employer never accepted Claimant's alleged 2013 Injury and issued a Notice of Denial. Employer did not pay Claimant any wage loss benefits relative to the alleged 2013 Injury. Claimant was not lulled into a false sense of security regarding the filing of his Claim Petition. Claimant himself admitted that, despite being aware of his physical injuries in 2013, he did not file a Claim Petition until August 6, 2018. Employer's payment of medical bills does not constitute an admission of liability as a matter of law.

Section 315 of the Workers' Compensation Act (Act)[4] states:

> In cases of personal injury all claims for compensation shall be forever barred, unless, ***within three years after the injury***, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.

77 P.S. §602 (emphasis added). There is no dispute that Claimant did not file his Claim Petition within three years of the 2013 Injury.

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §602.

10

However, the failure to file a claim within this period is not always an absolute bar. Section 315 of the Act also provides:

> Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition.

*Id.* While the payment of medical bills does not constitute payment of compensation or an admission of liability on behalf of the employer, the payment of indemnity benefits or wages in lieu thereof does. *Bailey v. Workers' Compensation Appeal Board (ABEX Corporation)*, 717 A.2d 17, 19-20 (Pa. Cmwlth. 1998) (payment of medical bills is not considered an admission of liability); *Kelly v. Workmen's Compensation Appeal Board (DePalma Roofing)*, 669 A.2d 1023, 1026 (Pa. Cmwlth. 1995) (payment of wages in lieu of compensation effectively admits liability under the Act).

Further, a claimant may toll the statute of limitations by presenting clear and precise evidence that the employer or its insurance carrier by its actions lulled him into a false sense of security regarding the filing of his claim. *McDevitt v. Workmen's Compensation Appeal Board (Ron Davison Chevrolet)*, 525 A.2d 1252, 1254 (Pa. Cmwlth. 1987); *Dudley v. Workmen's Compensation Appeal Board (Township of Marple)*, 471 A.2d 169, 171 (Pa. Cmwlth. 1984). "If a person is deceived, even unintentionally, as to his rights by one who has authority to act in the premises, courts will not ordinarily permit such deception to work an injury to the innocent party." *Workmen's Compensation Appeal Board v. Griffith*, 368 A.2d 1371, 1374 (Pa. Cmwlth. 1977).

It was Claimant's burden to show, by clear and precise evidence, that Employer or Excalibur, by their actions or statements, had lulled him into a false

11

sense of security regarding the filing of his claim. To that end, Claimant testified that after notifying Employer of the 2013 Injury, he spoke with Excalibur's claims representative, Marinelli, regarding treatment. R.R. at 52a-53a, 58a. Marinelli promptly mailed to him a prescription card to use for prescriptions related to the 2013 Injury. *Id.* at 46a; *see id.* at 66a.

Claimant testified that he never received a Notice of Denial and that Marinelli never once indicated to him that his claim was denied during their conversations over the span of five years. R.R. at 43a-45a, 60a. Whenever he called to obtain approval for an upcoming doctor's appointment or medical treatment, Marinelli would reassure Claimant "we got you covered." *Id.* at 58a, 62a; *see id.* at 51a.

Claimant testified that Marinelli told him early on that Excalibur would cover any work absences related to the 2013 Injury as "comp time." F.F. No. 13; R.R. at 58a, 93a. Claimant consistently testified over the course of two hearings that whenever he missed time from work due to 2013 Injury, he was given "comp time" in lieu of wage loss benefits, and he was never required to use vacation, sick, or personal time. *Id.* at 48a, 83a. Claimant explained that when he "had appointments with Dr. Kline, and [] had to take the day off [of work] to see him," he "didn't lose any of [his] accumulated time at work. It was covered by a comp day. And Excalibur paid for that." *Id.* at 59a. "I was always . . . given a comp day . . . which was reimbursed . . . . So I didn't use any of my vacation or sick or personal time." *Id.* "[W]henever I went to a Work[ers'] Comp[ensation] doctor or I had needles injected in me, I would tell work that it was a Work[ers'] Comp[ensation] day and they would mark me off for that. They would not take it off my sick time. They wouldn't take it off my vacation time or personal time." *Id.* at 83a. Claimant

12

testified he would receive the same amount of funds as if he had worked that day. *Id.*

In addition, Claimant testified that Excalibur sent him a prescription replacement card on November 29, 2017. R.R. at 48a-49a, 50a, 66a. Excalibur continuously paid for Claimant's medical bills related to the 2013 Injury until it denied payment on December 12, 2017. It was only at that point that Claimant realized he needed to take immediate action to preserve his claim and did so by filing his Review Petition on May 24, 2018, followed by the Claim Petition on August 6, 2018. *Id.* at 51a-52a.

Claimant's credible testimony regarding his receipt of comp time for any time missed from work along with his continuous receipt of full medical coverage for the 2013 Injury and lack of notice regarding a claim denial constitutes clear and precise evidence that Claimant was lulled into believing that his claim had been accepted and that there was no need for him to take any further action to preserve his claim. Claimant took immediate action upon discovering the deception. Thus, the WCJ and Board did not err in determining that Claimant's claim was not time barred.

## B. Claimant's Testimony

We next address whether the WCJ erred in admitting and relying upon Claimant's testimony regarding comp time when this testimony was based upon inadmissible documentary evidence. Claimant offered into evidence, over Employer's objections, a Kronos Time Card, which purported to show that certain days missed from work between 2013 and 2017 were noted as "WC-Work Comp." R.R. at 186a-217a. Although the Board determined that the Kronos Time Card was

not properly authenticated and should have been excluded, the Board erred by failing to similarly exclude Claimant's testimony regarding the document and receipt of comp time. If this testimony is excluded, the record is devoid of evidence that Claimant was lulled into a false sense of security necessary to toll the statute of limitations.

The evidentiary rules in administrative proceedings, including workers' compensation proceedings, are relaxed. *Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906 (Pa. 2002); *see* Section 422(a) of the Act, 77 P.S. §834(a) ("[n]either the [B]oard nor any of its members nor any [WCJ] shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same"); Section 505 of the Administrative Agency Law, 2 Pa. C.S. §505 (all relevant evidence of reasonably probative value may be received). Although the rules of evidence are relaxed, there must be a sufficient basis for the admission of evidence. *Pistella v. Workmen's Compensation Appeal Board (Samson Buick Body Shop)*, 633 A.2d 230 (Pa. Cmwlth. 1993) (the WCJ erred in admitting a surveillance tape which had not been properly authenticated).

For a document to be admissible, it must be properly authenticated by "evidence sufficient to support a finding that the item is what the proponent claims it is." Pa. R.E. 901(a); *see Guthrie v. Workers' Compensation Appeal Board (The Travelers' Club, Inc.), 854 A.2d 653, 658 (Pa. Cmwlth. 2004)*; *see also Keystone Dedicated Logistics, LLC v. JGB Enters. Inc.*, 77 A.3d 1 (Pa. Super. 2013). A document not prepared by the person testifying is not automatically rendered inadmissible as long as the authenticating witness provides sufficient information

14

relating to the preparation and maintenance of the record to justify a presumption of reliability. *Guthrie*, 854 A.2d at 658.

The Board properly determined that the Kronos Time Card was not properly authenticated and that the WCJ erred in admitting this evidence. Claimant was unable to provide sufficient evidence regarding the preparation and maintenance of the record to justify a presumption of reliability. Although Claimant referred to the Kronos Time Card during his testimony, R.R. at 81a-83a, the Kronos Time Card merely corroborated Claimant's testimony regarding how his leave time was allocated. *Id.* at 59a, 83a. Claimant consistently testified that he never had to use any of his own vacation, sick, or personal time leave time when he had medical appointments to treat his work injuries. *Id.* Even though the Kronos Time Card was inadmissible, Claimant's testimony as to how he was compensated for time used for medical appointments related to his 2013 Injury constituted sufficient evidence upon which to base a finding that he was lulled into a false sense of security regarding his claim. Upon review, the WCJ and Board did not err in allowing Claimant's testimony in this regard to stand.

## C. Full Recovery

Lastly, Employer contends that the WCJ erred in determining that Claimant had not fully recovered from the 2013 Injury. As the Board aptly noted, Employer's appeal in this regard is an attack on the WCJ's credibility determinations and assignment of weight to the evidence of record. Dr. Kline credibly and competently testified that Claimant sustained a left shoulder impingement syndrome, with secondary bursitis, as well as an aggravation of his preexisting degenerative osteoarthritis and disc disease of the cervical spine, with radicular

15

symptomology as a result of the 2013 Injury. Dr. Kline also opined that all of Claimant's ongoing problems relate to the 2013 Injury and that Claimant is only capable of working in a modified position with restrictions. Although Employer's expert testified that Claimant had fully recovered from the 2013 Injury, the WCJ specifically rejected his testimony and fully explained his reasons for doing so. F.F. No. 20. Such credibility determinations are beyond our review. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 344 (Pa. Cmwlth. 2008). Dr. Kline's testimony constitutes substantial evidence upon which to conclude that Claimant is not fully recovered from the 2013 Injury. Thus, the WCJ did not err when he granted Claimant's Review Petition or the medical aspects of his Claim Petition.

### IV. Conclusion

Accordingly, we affirm the order of the Board.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luzerne County,                    :
                                   :
                    Petitioner     :
                                   :
            v.                     : No. 443 C.D. 2021
                                   :
Dean Allford (Workers'             :
Compensation Appeal Board),        :
                                   :
                    Respondent     :

# **O R D E R**

AND NOW, this 13<u>th</u> day of <u>April</u>, 2022, the order of the Workers'
Compensation Appeal Board dated March 29, 2021, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge