572 A.2d 39

**Pauline M. BOLITCH, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (VOLKS-WAGON OF AMERICA, INC.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 9, 1989.

Decided Feb. 21, 1990.

Reargument Denied April 19, 1990.

Petition for Allowance of Appeal Denied
Oct. 29, 1990.

Samuel S. Blaufeld, with him, Pamela M. Schiller, Pitts-burgh, for petitioner.

John F. Will, Jr., Will, Keisling, Ganassi & McCloskey, Carnegie, for respondents.

Before CRAIG and BARRY, JJ., and BLATT, Senior Judge.

## OPINION

BARRY, Judge.

This is a petition for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of a referee denying workmen's compensation benefits to Pauline M. Bolitch (claimant) based on claimant's failure to give her employer, Volkswagon of America (employer), timely notice of claimant's injury as required by Section 311 of The Pennsylvania Workmen's Compensation Act [1] (Section 311). We affirm.

Claimant worked for employer as an assembler. This occupation required claimant, in part, to reach overhead to straighten tires on automobiles as the cars passed by on an assembly line. Claimant filed a claim petition in February of 1987, alleging that she sustained a work related injury on September 11, 1986. Claimant alleged in her petition that she sustained a ruptured disc due to her employment. Employer filed a timely answer denying claimant's allegations and pleading untimely notice of claimant's injury as a defense.

At the hearing before the referee, claimant testified that she experienced back pain while working on May 1, 1986. Claimant further testified that she had a prior problem with muscle spasms in approximately 1980 and she thought this was a recurrence of the back spasms. Claimant continued to work until July of 1986, when the plant routinely shut down for vacation. Claimant returned to work in August of 1986 and the pain began again. Claimant then saw Dr. Marion Skezas on August 22, 1986. Dr. Skezas advised claimant to be examined by an orthopedic surgeon. On

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 631.

September 9, 1986, claimant was evaluated by Jay B. Peterson, Jr., M.D., and claimant's ruptured disc was diagnosed. Claimant then continued working until September 11, 1986, when she left her employment after working for three hours. Claimant testified that she first informed employer of her injury on September 11, 1986. Dr. Peterson's testimony was also presented at the hearing in support of claimant's petition.

Based upon the evidence before him, the referee made the following pertinent findings of fact:

THIRD: The Referee finds the testimony of claimant credible and convincing that she sustained an injury to her back causing pain into her right leg on May 1, 1986, while working on an automobile assembly line for [Employer], which injury claimant knew of at that time and that it was work related, and she first reported the injury to [Employer] on September 11, 1986, giving [Employer] its first notice at that time of the injury.

. . . .

SIXTH: The Referee finds that the claimant's testimony was not credible or convincing that she sustained a separate new injury to her back on September 11, 1986, or that she sustained an aggravation of her May 1, 1986, injury on September 11, 1986, or another day other than May 1, 1986, in the course of her employment up to September 11, 1986.

. . . .

EIGHTH: The Referee finds that the testimony of Jay B. Peterson, Jr., M.D., was competent, credible, convincing and unequivocal with a reasonable degree of medical certainty when he opined he first treated claimant on September 9, 1986, she gave a history of back pain since May, 1986, and that a subsequent magnetic imaging resonance study revealed a ruptured disc at L5–S1 for which she had surgery called a micro-laminectomy by Dr. Maroon on January 15, 1987, but that claimant continued to have pain thereafter and a second operation called a percutaneous discectomy was proposed. The physician

further opined convincingly with a reasonable degree of medical certainty that the claimant had become unable to perform her pre-injury work for [Employer] due to her ruptured disc. However, the physician did not opine when the disc ruptured, other than by referring to the history given by the claimant to him.

. . . .

TENTH: The Referee finds that claimant first gave notice to [Employer] of her injury of May 1, 1986, on September 11, 1986, which was more than 120 days after her injury.

Based upon these findings of fact, the referee concluded that claimant failed to give notice of her injury to employer within 120 days of her injury as required by Section 311 and the referee denied claimant's petition. The referee's determination was affirmed by the Board and this timely appeal followed.

Claimant argues that the referee and Board committed error in three ways. First, claimant contends that there is insufficient evidence to support the finding that, as of May 1, 1986, claimant knew that her injury was work related. Second, claimant argues that each time she reached overhead to straighten the automobile tires after the initial injury on May 1, 1986, an aggravation of the initial injury occurred and, under our prior case law, the notice given to the employer on September 11, 1986 was timely. Third, claimant argues that even if she did know that the May 1, 1986, back pain was work related, the notice provisions of Section 311 did not begin to run until September 11, 1986, when she was disabled by the injury.

It is undisputed that employer first received notice of claimant's injury on September 11, 1986. Claimant's arguments are designed to establish that her injury, as that term is used within Section 311, occurred no more than 120 days prior to September 11, 1986. Section 311 provides:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their

behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease.

The first argument raised by claimant alleges that there is insufficient evidence to support the referee's finding that the claimant knew her injury was work related on May 1, 1986. In *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board (Larusso)*, 47 Pa.Commonwealth Ct. 492, 495, 408 A.2d 226, 228 (1979), we stated that "[t]he second sentence of Section 311 of the Act clearly provides that, when the relationship of the injury to the employment is not known to the employee, the 120–day period does not begin to run until the employee either knows or should know of such a relationship." Accordingly, in cases where it is claimed that an injured worker did not know of the relationship between his employment and his injury, it is incumbent upon the referee to make a factual finding as to when the injured worker knew, or reasonably should have known, of the relationship. In this case, the referee determined that claimant knew of her injury and that it was work related on May 1, 1986. Claimant argues that she did not know of the relationship between her employment and her injury until September of 1986, when claimant was examined by Dr. Peterson. Although it is true that claimant never testified that she knew her injury was work related on May 1, 1986, we believe it

was within the referee's power to conclude, based upon the evidence presented, that claimant knew or should have known of the relationship between her injury and her employment on May 1, 1986.

 It is important to remember that an injured worker needs to know only the *nature* of the injury and its relationship to employment in order for the 120–day period of Section 311 to commence. It is not necessary for an injured worker to know the precise medical diagnosis of the injury. *Workmen's Compensation Appeal Board (Heffelfinger) v. Paris Neckwear Co.*, 22 Pa.Commonwealth Ct. 543, 350 A.2d 212 (1976). In the present case, the nature of claimant's injury is a back injury. Claimant testified:

Q. Could you tell us when you first developed this [back pain] in May [of 1986]?

A. I say it was on—I think Thursday, May 1, I guess it started bothering me.

Q. Was it at work it began bothering you?

A. Yes, it did. I was at work.

. . . .

Q. Were you continuing to have the pain while you were working from May until shutdown in July?

A. Yes.

Q. Is there anything that brought it on more than anything else in that the [sic] job?

A. Every time I would reach up and turn them [sic] tires I would get the jabbing sensation down my right leg.

(N.T. 9–10). A fair reading of claimant's testimony establishes that claimant's back pain began at work on May 1, 1986, that the back pain continued for some period of time and that her work increased the pain. Under these facts, it is fairly obvious that the claimant should have known as of the date of her injury that her injury was work related. Consequently, we believe there is substantial evidence to support the referee's finding that the claimant knew the nature of her injury and that it was work related on May 1, 1986.

■ Claimant's second argument raises the issue of whether the referee and Board committed error in failing to conclude that claimant suffered a compensable aggravation of her herniated disc every time she reached overhead to straighten the tires, through and including September 11, 1986, when claimant last worked. In support of this proposition, claimant cites *Beaver Supermarket v. Workmen's Compensation Appeal Board (Sheldrake)*, 56 Pa.Commonwealth Ct. 505, 424 A.2d 1023 (1981).[2] *Sheldrake* is easily distinguished from the present case. There, we affirmed the award of benefits to a claimant who was injured many years before he was ultimately disabled by the injury. In that case, however, the employer had timely notice of the original injury. In addition, the claimant presented expert medical testimony upon which the fact finder could conclude that claimant's ultimate disability was caused by his work, which continually aggravated the original injury. Here, there is no expert medical testimony which would support a continual aggravation finding. Most important, claimant in this case did not give employer timely notice of the May 1, 1986 injury.

■ Claimant's final argument is that even if the claimant knew that her injury was work related on May 1, 1986, the 120–day notice provision of Section 311 did not begin to run until September 11, 1986, the date on which claimant was *disabled* by the injury. Since claimant gave notice of her injury to employer on September 11, 1986, claimant contends that she complied with the notice requirements of Section 311. Claimant's argument is based upon our holding in *Split Vein Coal Co. v. Workmen's Compensation Appeal Board (Erdman)*, 124 Pa.Commonwealth Ct. 642, 556 A.2d 958 (1989), where we held that the 120–day notice provision of Section 311 does not begin to run in *occupa-*

**2.** Claimant also cites *Divine Providence Hospital v. Workmen's Compensation Appeal Board (Bonner)*, 75 Pa.Commonwealth Ct. 565, 462 A.2d 917 (1983), in support of this proposition. We believe this case is inapposite for two reasons. First, *Bonner* concerns an injury which resulted from no *specific* incident. Second, *Bonner* does not even discuss the notice provisions of Section 311. Rather, *Bonner* discusses when an injury occurs for purposes of insurance coverage.

118

*tional disease* cases until an injured worker knows or reasonably should know that he is disabled. Claimant's reliance upon this case is misplaced as this is not an occupational disease case.

The last sentence of Section 311 states: "The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease". This provision of Section 311 relates only to occupational diseases. Accordingly, it is only in occupational disease cases that an injured worker must be disabled before the 120–day period of Section 311 will begin to run. In cases involving other than occupational diseases, the 120–day period of Section 311 begins to run when the injured worker knows, or reasonably should know, of the nature of his injury and that the injury is work related, regardless of whether or not the injured worker is disabled by the injury.

Because the present case does not involve an occupational disease, the 120–day notice provision of Section 311 began to run when the claimant knew or should have known that she was injured and not on the day on which she became disabled from the injury. Having determined that there is substantial evidence to support the finding that claimant knew or should have known on May 1, 1986, that her back injury was work related and that claimant first gave employer notice of her injury on September 11, 1986, claimant is barred from recovering workmen's compensation benefits by operation of Section 311.

### ORDER

NOW, February 21, 1990, the order of the Workmen's Compensation Appeal Board, dated May 2, 1989, at No. A–94870, is affirmed.